E. H. Boykin v. Town of River Junction, B. F. Barnes as Mayor, and R. H. Hatcher as Clerk.

169 So. 492.
Opinion Filed July 17, 1936.

*E. H. Boykin, in pro. per.,* for Appellant;

*Blake & Taylor,* for Appellees.

DAVIS, J.—The Town of River Junction owns an electric light and power system originally constructed in 1923 by the issuance of general obligation bonds voted by the electors. The existing system yields an annual net revenue the expenditure of which by the municipality for any municipal purpose is authorized by law. It does not own its generating facilities.

The proposition now before the Court is an order denying on appeal from an injunction against the issuance of certain "Electric System Revenue Certificates" described in an ordinance of said Town of River Junction adopted under date of March 16, 1936, which ordinance reads as follows:

"ORDINANCE No. 128.

"AN ORDINANCE PROVIDING FOR THE CONSTRUCTION OF ADDITIONS IND EXTENSIONS TO THE ELECTRIC LIGHT AND POWER SYSTEM OF THE TOWN OF RIVER JUNCTION AND FOR

THE ISSUANCE OF $43,000 REVENUE CERTIFICATES OF THE TOWN OF RIVER JUNCTION, FLORIDA, PAYABLE SOLELY FROM THE ELECTRIC LIGHT AND POWER SYSTEM OF SAID TOWN, TO FINANCE THE COST OF SUCH CONSTRUCTION.

"BE IT ORDAINED BY THE TOWN COUNCIL OF THE TOWN OF RIVER JUNCTION, FLORIDA:

"Section 1.   It is hereby ascertained, determined and declared that:

"(a)   The Town of River Junction, Florida (hereinafter called the 'Town'), now owns, operates and maintains an electric light and power system, the construction of which electric light and power system was financed by the issuance of general obligation bonds of said Town, for the payment of which bonds said Town was required·by law to levy and collect an ad valorem tax upon all taxable property located within the territorial confines of said Town.

"(b)   The net revenue of such electric light and power system during the last three fiscal years has amounted to the following sums:

| "Fiscal Years | Net Revenue |
|---|---|
| Year ending June 30, 1933 | $  987.86 |
| Year ending June 30, 1934 | 2,751.47 |
| Year ending June 30, 1935 | 4,109.09 |

and the revenue of said system has not been pledged either in whole or in part to the payment of any outstanding bonds or other obligations of the Town.   The estimated net revenue of said system in each fiscal year after the construction of the additions and improvements to said system hereinafter referred to, is in excess of the amount to become due in each such fiscal year for principal and interest on the Certificates hereinafter provided for.

"(c) It is necessary and desirable to construct additions and improvements to said electric light and power systems, such additions and improvements to consist of an electric generating plant. The estimated cost of constructing such additions and improvements is $65,458.

"Section 2. For the purpose of financing the cost of constructing said additions and improvements, in excess of the grant to be made to the Town by the United States of America, there shall be issued negotiable electric system revenue certificates of the Town (hereinafter called the Certificates) in the aggregate principal amount of $43,000, which Certificates shall be dated December 1, 1935, in the denomination of $1,000 each, numbered from 1 to 43, both inclusive, in order of maturity, shall bear interest at the rate of four per centum (4%) per annum payable semi-annually on June 1 and December 1 in each year, first interest being payable June 1, 1936, payable as to both principal and interest at the office of the Town Clerk of the Town, in such coin or currency as is, on the respective dates of payment of the same, legal tender for the payment of public and private debts, and shall mature serially on December 1, in the year and amounts as follows, to-wit:

| "Year | Amount |
|---|---|
| 1939-1942, inclusive | $1,000 |
| 1943-1948, inclusive | 2,000 |
| 1949-1957, inclusive | 3,000 |

"Said Certificates shall be signed by the Mayor of the Town and sealed with the corporate seal of said Town attested by the Town Clerk; and the interest coupons attached to said Certificates shall be executed with the facsimile signatures of said Mayor and said Town Clerk.

"Section 3. The Certificates and coupons attached thereto shall be in substantially the following form, to-wit:

"No._____                                          $1,000

"UNITED STATES OF AMERICA
"STATE. OF FLORIDA
"COUNTY OF GADSDEN
"TOWN OF RIVER JUNCTION
"ELECTRIC SYSTEM REVENUE CERTIFICATES

"The Town of River Junction, in the County of Gadsden, a municipal corporation of the State of Florida, for value received, hereby promises to pay to bearer solely from the Bond Fund provided therefor as hereinafter set forth, the principal sum of ONE THOUSAND DOLLARS ($1,000) on December 1, 19__, and to pay interest on said principal sum semi-annually from said Bond Fund, at the rate of four per centum (4%) per annum on June 1 and December 1 in each year until maturity of the principal sum thereof, in each year until maturity of the principal sum thereof, upon the presentation and surrender of the annexed interest coupons as they severally become due. Both principal and interest are payable at the office of the Town Clerk in the Town of River Junction, Florida, in any coin or currency which on the respective dates of payment of the same is legal tender for the payment of public and private debts.

"This certificate is one of an authorized issue limited to an aggregate principal amount of Forty-three thousand dollars ($43,000). all of like date and tenor, except as to number and maturity, issued by said Town, under the authority of and in full compliance with the Constitution and Statutes of the State of Florida, particularly the Charter of said Town and an ordinance duly adopted by the Town Council of said Town providing for the construction of certain improvements to the electric light and power system of said Town. Said ordinance provides that the Town shall fix and maintain rates and collect charges for the facilities and

service afforded by the electric light and power system which will provide revenues sufficient at all times, to pay the cost of operation, maintenance and repairs of said system, and to pay into the Bond Fund created and designed by said ordinance as 'Electric System Revenue Certificates Sinking Fund' a sufficient amount of revenues over and above such cost of operation, maintenance and repairs, to pay the interest on and the principal of said certificates as the same respectively become due.

"This certificate and the interest coupons hereunto appertaining are issued upon the following terms and conditions, to all of which each taker and owner hereof consents and agrees:

"(a)   Title to this certificate and to the annexed interest coupons, may be transferred by delivery in the same manner as a negotiable instrument payable to bearer; and

"(b)   Any person in possession of this certificate, or of the interest coupons hereunto appertaining, regardless of the manner in which he shall have acquired possession, is hereby authorized to represent himself as the absolute owner thereof, and is hereby granted power to transfer absolute title thereto by delivery thereof to a *bona fide* purchaser, that is, to any one who shall purchase the same for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his transferror; every prior taker or owner of this certificate and of the annexed interest coupons waives and renounces all of his equities or rights therein in favor of every such *bona fide* purchaser, and every such *bona fide* purchaser shall acquire absolute title thereto and to all rights represented thereby; and

"(c)   The Town of River Junction may treat the bearer of this certificate, or of the interest coupons hereunto apper-

taining as the absolute owner thereof for all purposes without being affected by any notice to the contrary.

"It Is Hereby Certified, Recited and Declared that all acts, conditions and things required by the Constitution and Statutes of the State of Florida and by the Ordinance of the Town of River Junction to exist, happen and be performed precedent to and in the issuance of this certificate, have existed, have happened and have been performed in due time, form and manner as required by law.

"In Witness Whereof, The Town of River Junction in the County of Gadsden, State of Florida, has caused this certificate to be signed in the name of said Town by its Mayor and its corporate seal to be hereto affixed and attested by its Town Clerk, and the interest coupons annexed hereto to be executed by the facsimile signatures of said Mayor and Town Clerk and this certificate to be dated the first day of December, 1935.

"(Seal)                    "Town of River Junction, Florida
                           "By_____
"Attest:                                    Mayor.
"_____
          Town Clerk.

_____

"(Validation Endorsement)

"Validated and confirmed by decree of the Circuit Court of the Second Judicial Circuit in and for Gadsden County, Florida, rendered on the_____day of_____, 19____.

"In Witness Whereof I have hereunto set my hand and affixed the seal of said Circuit Court this_____day of_____, 19____.

"(Seal)                    "_____
                           Clerk, Circuit Court in and
                           for Gadsden County, Florida.

"(Coupon)

"No._____                                          $20.00

"On the first day of _____, 19__, the town of River Junction, Florida, will pay to the bearer hereof at the office of the Town Clerk in River Junction, Florida, out of the Bond Fund described in the attached certificate, twenty dollars ($20.00) in any coin or currency which, on the date of payment of this coupon, is legal tender for the payment of public and private debts, being six months interest then due on its Electric System Revenue Certificates dated December 1, 1935, and numbered_____.

"Town of River Junction, Florida.

"_____          "By_____
Town Clerk                                          Mayor
"_____

"Section 4.   The Mayor is hereby authorized to execute the Certificates in the name of the Town and the Town Clerk is hereby authorized and directed to affix the seal of the Town to the certificates and to attest such seal.   The Mayor and the Town Clerk are hereby authorized and directed to cause the coupons attached to said certificates to be executed by their respective facsimile signatures.   The certificates shall be and they hereby are awarded to the United States of America at a price of par plus accrued interest and the Town Clerk is hereby authorized and directed to deliver said certificates to the purchaser thereof at one time or from time to time as he may deem advisable upon receipt of payment therefor.

"Section 5.   The electric light and power system of the Town of River Junction shall be operated on a fiscal year basis, commencing on first day of July of each year and ending on the 30th day of June following.

"From and after the effective date of this Ordinance all of the revenues derived from the operation of said electric light and power system shall be deposited as received into an account designated 'Electric System Revenue Account' (hereinafter called the 'Revenue Account') and the monies in said Revenue Account shall be set aside into separate special funds, as follows:

"(a) Operation, Maintenance and Repair Fund: There is hereby created and established a fund designated 'Electric System Operation, Maintenance and Repair Account' (hereinafter called the "Operation Account") into which there shall be paid out of the Revenue Account a sufficient amount during each month to provide for the reasonable current expenses of operation, maintenance and repairs of the electric light and power system.

"(b) Electric System Revenue Certificates Sinking Fund: There is hereby created and established an 'Electric System Revenue Certificates Sinking Fund' (hereinafter called the 'Bond Fund') into which shall be paid in approximately equal monthly installments during each fiscal year after making the above required payments into the Operation Account, an amount equal to one hundred per cent (100%) of the amount required to pay:

"(1)   The next maturing installment of principal of any of said Certificates.

"(2)   The interest payments to fall due on all outstanding Certificates up to and including the date of the next maturing installment of principal of any of said certificates and,

"(3)   An amount at least equal to twenty percentum (20%) of the sum of the amount required by (1) and the amount required by (2) in order to provide a reserve in such Bond Fund. The payments required by (3) shall be continued until there is in said Bond Fund an amount sufficient

to meet the next maturing installment of principal of any of said Certificates and the interest payments due on all outstanding Certificates up to and including the date of the next maturing installment of principal of any of said Certificates and the principal and interest payments to fall due during the next two fiscal years thereafter. No payment need to be made into the Bond Fund, if, and when, the amount in such Bond Fund is at least equal to the aggregate principal amount of Certificates then outstanding plus the amount of interest then due or thereafter to become due on said Certificates. If in any month for any reason there shall not be paid into said Bond Fund the amounts required by this Section, then an amount, equal to such deficiency, in the amount required to be paid into said Bond Fund in such month shall be added to the amount otherwise required to be paid into said Bond Fund during the next succeeding month. The monies in said Bond Fund shall be used solely for the purpose of paying the principal of, and the interest on, the Certificates and for no other purpose. All monies in said Bond Fund shall be deposited in a bank, or banks, and shall be continuously secured by direct obligations of the United States of America, which obligations shall be at all times at least equal in market value to the amount of monies in said Bond Fund.

"Section 6. The Town hereby covenants and agrees with the holders of such certificates that while any of the Certificates or coupons issued hereunder are outstanding and unpaid:

"(a) The Town will maintain the electric light and power system in good condition, and operate the same in an efficient manner and at a reasonable cost.

"(b) The Town shall fix and maintain rates and collect charges for the facilities and services afforded by the elec-

tric light and power system which will provide revenue sufficient at all times to pay the cost of operation, maintenance and repairs of said electric light and power system and to maintain the Bond Fund as hereinbefore provided by Section 5 (b) hereof.

"(c) The Town will not issue any additional obligations payable from the revenues of said electric light and power system, unless the lien of such obligations on the revenue of said electric light and power system, is made junior and subordinate in all respects to the lien of the Certificates issued hereunder, and that it will not sell, mortgage, lease or otherwise dispose of or encumber any property essential to the proper operation of the electric light and power system.

"(d) The Town will maintain insurance of the electric light and power system of the kind and in the amount which usually would be maintained by private corporations owning and operating a similar undertaking.

"(e) The Town will keep proper books of record and account, separate from all other records and accounts, in which complete and correct entries shall be made in accordance with standard principles of accounting, of all transactions relating to the electric light and power system. The Town shall furnish to any holder of any of the certificates at the time outstanding, at the written request of such holder, not more than thirty days after the close of each six month fiscal period complete operating and income statements of the electric light and power system in reasonable detail covering such six months period, and not more than sixty days after the close of each fiscal year complete financial statements of the electric light and power system in reasonable detail covering such fiscal year and certified by independent auditors if so requested.

"(f) Any holder of any certificate issued hereunder shall have the right at all reasonable times to inspect the electric light and power system and all records and accounts thereof.

"None of the foregoing covenants shall be construed as requiring the Town to expend any funds other than the revenues derived from the operation of the electric light and power system and all departments thereof by such electric light and power system.

"Section 7. No taxes shall ever be levied and no monies shall ever be taken or diverted from any funds of the Town for the payment of the principal of or interest on the Certificates issued hereunder, except as hereinbefore expressly provided.

"Section 8. All ordinances and resolutions or parts thereof in conflict with the provisions of this Ordinance are to the extent of such conflict hereby repealed.

"Section 9. This Ordinance shall be in force and effect from and after its passage.

"Passed in open council this 16th day of March, A. D. 1936.

"W. L. Shepard, President Town Council, River Junction, Florida.

"Attest: R. H. Hatcher, Town Clerk, River Junction, Florida."

"Approved March 16, 1936.

"B. F. Barnes, Mayor, Town of River Junction, Florida."

The certificates were judicially validated in statutory validation proceedings pursuant to decree of the Circuit Court rendered on April 30, 1936. But the contention is made here that inasmuch as there is no showing in the validation proceedings that said certificates have ever been constitutionally authorized by a vote of the freeholders pur-

suant to amended Section 6 of Article IX of the Constitution, that the involved certificates being in legal effect "municipal bonds" are void, and their issuance should therefore be enjoined.

The proper authorization by the electors in the case of municipal bonds is jurisdictional in the case of certificates that are in contemplation of law nothing more than a form of "bonds." So the relief prayed by appellant must be granted, unless the certificates described in the validation proceedings heretofore referred to fall within the specific exception recognized in the following cases heretofore decided by this Court: State v. City of Miami, 113 Fla. 280, 152 Sou. Rep. 6; State v. City of Lake City, 116 Fla. 10, 156 Sou. Rep. 924; State v. City of Daytona Beach, 118 Fla. 29, 158 Sou. Rep. 300; State v. City of Clearwater, 124 Fla. 354, 168 Sou. Rep. 546; Wilson v. City of Bartow, 124 Fla. 356, 168 Sou. Rep. 545.

In the cases just cited, it has been held by us that special revenue certificates of indebtedness issued to fund anticipated net earnings of an *existing* utility may lawfully be issued absent the approving vote of a majority of the freeholder electors given in accordance with amended Section 6 of Article IX of the Constitution, where it affirmatively appears that the object of the funding operation is merely to reinvest the proceeds back into the system from which the anticipated revenues are to be derived, such as for the purpose of reconditioning, repairing, enlarging, extending or improving the existing plant or system, the better to conserve and appreciate its utilitarian earning power and advantages for the benefit of its municipal owner and operator.

The "Electric System Revenue Certificates" in controversy in this case do not appear to violate any of the prin-

ciples heretofore decided in the cases of which we have just made mention. On the contrary, they appear to have been conceived, proposed, authorized and validated by the Circuit Court in strict compliance with the limitations we have heretofore decided must be made to appear in every case where such certificates are proposed to be issued absent the approving vote of a majority of freeholders cast in accordance with the Constitution. It affirmatively appears from the proceedings also that the City is neither directly nor indirectly pledged to exercise its governmental power of taxation to discharge the certificates in question.

So the decree of the Circuit Court denying appellant an injunction and dismissing the bill of complaint is accordingly affirmed.

Affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.